IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| BNSF RAILWAY COMPANY,<br>a Delaware Corporation,<br><br>Plaintiff,<br><br>v.<br><br>SEATS, INCORPORATED,<br>a Wisconsin Corporation,<br><br>Defendant. | Case No. 4:16-cv-03121-RGK-CRZ<br><br>Senior Judge Richard G. Kopf<br><br>Magistrate Judge Cheryl R. Zwart |

**DEFENDANT SEATS, INCORPORATED'S REPLY BRIEF IN SUPPORT OF
MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)**

Defendant Seats, Incorporated ("Seats"), by counsel, for its Reply Brief in Support of Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6), states as follows:

### I. INTRODUCTION

Despite the United States Supreme Court's recent decision in *Kurns v. Railroad Friction Products Corp.*, 132 S. Ct. 1261 (2012) and a long line of federal and state court cases preempting state law claims like those BNSF is attempting to assert against Seats, BNSF bases its Response to the Motion to Dismiss on non-binding, outlier decisions in *Engvall v. Soo Line R.R.*, 632 N.W.2d 560 (Minn. 2001) and *Delaware & Hudson RY Co., Inc. v. Knoedler Manufacturers, Inc.*, 781 F.3d 656 (3rd Cir. 2015). Only one court has expressly adopted *Knoedler*'s reasoning and *Engvall* has been heavily criticized and rejected by courts across the country. To permit BNSF's state law claims to proceed would undermine congressional intent under the Locomotive Inspection Act (the "LIA") and contradict the Supreme Court's decision in *Kurns*.

In addition, BNSF's claims for contribution, indemnity, and equitable subrogation all fail as a matter of law because Seats does not share a common liability with BNSF. Likewise, the breach of contract claim should be dismissed because BNSF cannot meet its burden to show that

1

it was an intended third-party beneficiary of the Contract.[1] Therefore, this Court should grant Seat's Motion and dismiss the Complaint with prejudice.

## II. ARGUMENT

### A. Permitting BNSF's state law claims to proceed would undermine congressional intent, contradict Supreme Court precedent, and impermissibly create a private right of action under the LIA.

Permitting BNSF to assert state law claims based on a violation of the LIA would undermine congressional intent to preempt the locomotive field, contradict *Kurns*, and create a private right of action against manufacturers of locomotive equipment where none exists. Congress did not provide a private right of action for a violation of the LIA and drafted FELA to apply only to railway carriers and *not* manufacturers. *See Union Pac. R.R. Co. v. Motive Equip., Inc.*, 714 N.W.2d 232, 236-37 (2006 WI App)(citing *Napier v. Atlantic Coast Line R. Co.*, 47 S.Ct. 207, 208, 272 U.S. 605, 611-13 (U.S., 1926)). Both federal and state courts have repeatedly held that state law claims based on an allegedly defective design and/or manufacture of locomotive components are pre-empted under the LIA. *See, e.g., Forrester v. American Dieselectric, Inc.*, 255 F.3d 1205 (9th Cir. 2001)(recognizing that locomotive equipment manufacturers have "broad immunity from tort liability"); *Oglesby v. Delaware & Hudson Ry,* 180 F.3d 458, 460-462 (2d Cir. 1999)(summary judgment for manufacturer of allegedly defective locomotive seat due to LIA preemption); *Darby v. A-Best Products Co.,* 811 N.E.2d 117, 1125 (Ohio 2004) (state law claims against locomotive manufacturers are "wholly futile").

In *Roth v. I & M Rail Link LLC,* 179 F. Supp. 2d 1054 (S.D. Iowa 2001), the plaintiff attempted to bring claims against a locomotive manufacturer for injuries arising out of a locomotive accident. The plaintiff asserted that the manufacturer was negligent because it did not

---

[1] Seats adopts the definitions contained in its Brief in Support of Motion to Dismiss.

2

comply with LIA standards. *Id.* at 1057. The manufacturer moved for summary judgment on the basis that the LIA preempted plaintiff's state law claims. *Id.* Like BNSF here, the plaintiff argued that the LIA did not preempt her claims because she was not seeking to regulate locomotives by imposing requirements beyond those under the LIA, but only asserted state law claims based on a violation of federal standards, *i.e.*, the LIA. The District Court rejected that argument, holding that "[w]hen Congress intends a statute to have a broad preemptive effect, however, preemption is not precluded 'simply because a state law is consistent' with the statute's substantive requirements." *Id.* at 1061 (quoting *Ingersoll-Rand,* 498 U.S. 139).

Similarly, in *Motive Equipment,* an injured employee filed suit against Union Pacific, a railroad carrier, after a refrigerator fire caused an injury. 714 N.W. 2d 232 (Wis. App. 2006). Union Pacific subsequently filed an action for contribution and indemnification against the manufacturer of the refrigerator. The Wisconsin Court of Appeals dismissed the action based on the LIA's broad pre-emptive effect, holding that "Congress intended federal law to occupy the entire field of locomotive safety and equipment, 'particularly as it relates to injuries suffered by railroad workers in the course of their employment.'" *Id.* (citing *Law v. General Motors Corp.,* 114 F.3d 908, 910 (9th Cir. 1997)). The court concluded that "any claim, including one alleging contribution/indemnification, will be preempted by federal law if the subject matter of the claim falls within the preemptive field." *Motive Equipment,* 714 N.W.2d at 237.

BNSF's Response does not address the above decisions, but instead relies heavily on *Engvall*. In addition to being non-binding on this Court, *Engvall* has been almost universally rejected or distinguished by subsequent LIA jurisprudence. *See Roth,* 179 F.Supp.2d at 1062–63 (rejecting *Engvall* and holding that "[a]ny claim, whether state or federal, based on LIA standards would necessarily affect the locomotive design, construction, and material decisions made by

3

railroads.")*; Motive Equipment,* 714 N.W.2d at 236–37 ("Accepting the reasoning in *Engvall* ... would result in a clear violation of congressional intent to occupy the entire field of regulating locomotive equipment"); *Stevenson v. Union Pacific R. Co.*, 4:07-CV-00522BSM, 2009 WL 129916, at *3-4 (E.D. Ark. Jan. 20, 2009)(rejecting *Engvall* and concluding that "[t]here is no practical way ... to consider the claim [for contribution and indemnification against a locomotive component manufacturer] without interfering with the uniform national standards); *Wright v. General Elec. Co.,* 242 S.W.3d 674 (Ky. App. 2007)(rejecting *Engvall* and holding that preemption of state common law tort claims "overwhelmingly represent the majority rule"); *Mehl v. Canadian Pac. Ry.,* 417 F. Supp. 2d 1104, 1115 (D.N.D. 2006)(finding that the holding in *Engvall* "contradicts" opinions of the United States Supreme Court). And as noted by the District Court in *Roth,* many of the cases relied on by *Engvall* involved the Safety Appliance Act, which "does not have the broad preemptive effect that the LIA has." *Roth,* 179 F.Supp.2d at 1062 (citing *Napier,* 272 U.S. at 613).

BNSF also relies on *Knoedler* and cites to the only court that has expressly adopted the Third Circuit's reasoning, the Arizona Court of Appeals' decision in *BNSF Ry. Co. v. Seats, Inc*., 349 P.3d 1096, 1097 (Ct. App. 2015), *review denied* (Oct. 27, 2015). However, BNSF's Response fails to acknowledge that the District Court of Colorado and the New Jersey Court of Appeals have both rejected *Knoedler* and held that the LIA continues to preempt state law claims arising from locomotive equipment. *See Evans v. Union Pac. R.R. Co.*, No. 13-CV-1732-WJM-BNB, 2015 WL 1945104, at *4 (D. Colo. Apr. 29, 2015)(The Court agrees that any defective design claim is preempted by the LIA, and evidence of such a design claim is precluded to whatever extent that Plaintiff seeks to assert it); *Estate of Brust v. ACF Indus., LLC*, 127 A.3d 729, 737 (App. Div.

2015)("In our view, state law claims for defective design of the 'locomotive equipment,' and for failure to warn about its risks, fall within the field preempted by the LIA as defined in *Napier*)).

The Supreme Court's decision in *Kurns* is binding authority and preempts BNSF's asserted state law claims against Seats. To hold otherwise would subject railway manufacturers to inconsistent and contradictory applications of railroad safety standards. Liability might be imposed in one jurisdiction but not another, even though the manufacturer's conduct in the two cases was identical. That is exactly the situation Congress intended to avoid. *See Ouellette v. Union Tank Car Co.,* 902 F. Supp. 5, 10 (D. Mass. 1995). Thus, this Court should hold that BNSF's state law claims are preempted by the LIA and dismiss the Complaint with prejudice.

    **C.**    **BNSF is not an intended third-party beneficiary of the Contract and, thus, does not have any right to assert a claim thereunder.**

To prove it is a third-party beneficiary of the Contract, BNSF is required to set forth facts establishing that Seats contemplated BNSF's rights and provided for them in the Contract. *See Biby v. Board of Regents, of University of Nebraska at Lincoln*, 419 F.3d 845, 852 (8th Cir. 2005). BNSF has not satisfied that burden here. Rather than plead facts, BNSF attempts to distinguish *Spring Valley IV Joint Venture v. Nebraska State Bank*, 690 N.W.2d 778 (Neb. 2005) on the basis that the Nebraska Supreme Court was considering the rights of a third-party beneficiary in the context of a motion for summary judgment. The procedural posture is irrelevant, however, because the analysis focuses on whether the party suing as a third-party beneficiary has met their burden to show the contract was for her direct benefit. *See Winkler v. Miller*, 2013 WL 12121484, at *2 (D.Neb., 2013)(holding that the plaintiff was not a real party in interest in the context of a motion to dismiss)). BNSF cannot show, nor has it properly alleged, that the Contract was for BNSF's direct benefit.

Importantly, BNSF fails to address the Nebraska Supreme Court's holding in *Podraza v. New Century Physicians of Neb., LLC*, where the court held that the right of a third party to bring suit on a contract must "affirmatively appear from the language of the instrument when properly interpreted or construed." 789 N.W.2d 260, 267 (Neb. 2010). Here, the Complaint does not make even a single reference to contractual language from which it would "affirmatively appear" that Seats intended to confer a benefit directly upon BNSF. *Podraza*, 789 N.W.2d at 267. BNSF's assumption that it is an intended beneficiary of the Contract is not sufficient to satisfy its burden under Nebraska law. Thus, BNSF does not have the right to bring a claim under the Contract.

**D.    BNSF's indemnification and contribution claims should be dismissed because BNSF and Seats do not share a common liability to the Engineer.**

BNSF's indemnity and contribution claims fail as a matter of law because Seats and BNSF did not, and do not, share a common liability to the Engineer. The LIA does not provide a private right of action to railroad employees injured by locomotive equipment. *See* 49 U.S.C. § 21302 (1994); *Urie v. Thompson*, 337 U.S. 163, 188 (1949). Rather, an injured employee's sole remedy is to sue his or her *employer* under FELA. *See Stevenson,* 2009 WL 129916, at *2 (E.D. Ark. Jan. 20, 2009). In other words, manufacturers of locomotive equipment are immune from tort liability to railroad employees because FELA is inapplicable to manufacturers. *See Bell v. Illinois Cent. R. Co.*, 236 F.Supp.2d 882, 890 (N.D.Ill., 2001)(citing *Law,* 114 F.3d at 911). Because congressional intent forecloses the possibility of Seats' liability to the Engineer for his alleged injuries, there is no common liability between Seats and BNSF in this matter. Consequently, the Court should dismiss the indemnity and contribution claims with prejudice.

6

    **E.**     **BNSF's equitable subrogation claim should be dismissed because Seats was not liable to the Engineer and, thus, there was not any debt that BNSF satisfied on behalf of Seats.**

Under the doctrine of equitable subrogation, BNSF is required to show a common harm for which both it and Seats are liable. *Rawson v. City of Omaha*, 322 N.W.2d 381, 384 (Neb. 1982). BNSF cannot meet that burden because there is no set of circumstances under which BNSF could have paid a debt owed by Seats to the Engineer relating to his injuries. As explained above, manufacturers of locomotive equipment, like Seats, are immune from tort liability to railroad employees. Thus, Seats is not, and cannot, be liable to the Engineer in this matter. Because there is no common liability between Seats and BNSF, the claim for equitable subrogation lacks merit and should be dismissed with prejudice.

### III. CONCLUSION

WHEREFORE, Defendant Seats, Incorporated respectfully requests that this Court dismiss Plaintiff BNSF Railway's Complaint with prejudice pursuant to Rule 12(b)(6).

                                                            Respectfully submitted,

                                                            **SEATS, INCORPORATED**

                                                            *s/ J. Michael Hearon*
                                                            Anthony P. Steinike (ARDC# 6279857)
                                                            J. Michael Hearon (ARDC# 6307485)
                                                            *Counsel for Defendant Seats, Incorporated*
                                                            Quarles & Brady LLP
                                                            300 North LaSalle Street, Suite 4000
                                                            Chicago, IL 60654-3406
                                                           (312) 715-5000 | (312) 715-5155 (fax)
                                                           anthony.steinike@quarles.com
                                                           michael.hearon@quarles.com

## **CERTIFICATE OF SERVICE**

I, J. Michael Hearon, an attorney, certify that on October 28, 2016, I caused **Defendant Seats, Incorporated's Reply in Support of Motion to Dismiss** to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record at their e-mail addresses on file with the Court.

/s/ *J. Michael Hearon*

J. Michael Hearon (ARDC# 6307485)
Quarles & Brady LLP
300 North LaSalle Street, Suite 4000
Chicago, IL 60654-3406
(312) 715-5000 | (312) 715-5155 (fax)
michael.hearon@quarles.com