IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| BNSF RAILWAY COMPANY, a Delaware Corporation authorized to do business in Nebraska, | ) ) ) ) | 4:16CV3121 |
| Plaintiff, | ) ) | |
| v. | ) ) | **MEMORANDUM AND ORDER** |
| SEATS, INCORPORATED, a Wisconsin Corporation, | ) ) ) | |
| Defendant. | ) ) ) | |

Plaintiff BNSF alleges that in 2015, it settled a contested Federal Employers' Liability[1] ("FELA") and Locomotive Inspection Act[2] ("LIA") action with an employee engineer. (Filing 1, Complaint ¶¶ 16 & 19.) The engineer alleged that the backrest of his locomotive seat gave away suddenly and without warning as a result of an allegedly defective reclining mechanism, resulting in career-ending injuries to his back. (*Id.* ¶¶ 15 & 17.) He claimed the locomotive seat—which was designed, manufactured, and marketed by the defendant in this action, Seats, Inc., and installed by General Electric ("GE")—did not comply with the federal standards set forth in the LIA because it was not in proper condition and safe to operate without unnecessary danger of personal injury. (*Id.* ¶¶ 12-14, 18.)

In the action now before this court, BNSF alleges that Seats, Inc., contracted to sell locomotive seats to GE, a locomotive manufacturer, for use in GE's locomotives, including the one in which the BNSF employee engineer was injured. (*Id.* ¶¶ 8-9.) BNSF claims it is a third-party beneficiary of this contract between Seats, Inc., and

---

[1] 45 U.S.C. § 51, *et seq*.

[2] 49 U.S.C. § 20701, *et seq*.

GE to supply and install seats in locomotives used in interstate commerce that were safe, suitable for their intended use, and in compliance with the LIA. (*Id.* ¶ 11.) In this diversity action alleging products liability based on both negligence and strict liability, breach of contract, and equitable subrogation, indemnity, or contribution, BNSF seeks to recover from Seats, Inc., the amount of the settlement, expenses, and attorneys' fees incurred as a result of the physical harm caused to BNSF's engineer by the defective, non-LIA-compliant seat.

Defendant Seats, Inc., has filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), arguing that (1) all of BNSF's claims are preempted by the LIA; (2) BNSF's breach of contract claim fails to state a claim because BNSF is not an intended third-party beneficiary of the subject contract; and (3) BNSF's equitable subrogation, indemnity, or contribution allegations fail to state a claim because Seats, Inc., and BNSF do not share a common liability. (Filing 8.)

## LIA PREEMPTION

The LIA sets standards for locomotives and its "parts and appurtenances," generally requiring them to be "in proper condition and safe to operate without unnecessary danger of personal injury." 49 U.S.C. § 20701(1). In *Napier v. Atlantic Coast Line R. Co.*, 272 U.S. 605 (1926), the United States Supreme Court held that the LIA's predecessor—the Boiler Inspection Act ("BIA")—"occupied the field of regulating locomotive equipment . . . so as to preclude state legislation" requiring that locomotives contain fireboxes with automatic doors and cab curtains, neither of which were required by federal law. *Id.* at 607. The Court found that the power delegated to the Interstate Commerce Commission by the BIA "is a general one," "was intended to occupy the field," and "extends to the design, the construction, and the material of every part of the locomotive and tender and of all appurtenances." *Id.* at 611, 613.

The United States Supreme Court reaffirmed the broad preemptive scope of the LIA in *Kurns v. Railroad Friction Products Corp.*, 132 S. Ct. 1261 (2012), holding

that the Act preempts the entire field of regulating locomotive equipment, including state common-law tort claims for defective design and failure to warn against manufacturers of locomotive equipment. The Court stated that "[b]ecause petitioners' claims are directed at the equipment of locomotives, they fall within the pre-empted field" which "admits of no exception for state common-law duties and standards of care." *Id.* at 1269.

BNSF attempts to circumvent the Court's holding in *Kurns* that state-law tort claims "directed to the subject of locomotive equipment" are preempted by the LIA, *id.* at 1270, by alleging that Seats, Inc., violated the *federal* standard of care imposed by the LIA, not a standard of care under Nebraska law.[3] (Filing 11, Pl.'s Br. Opp'n

---

[3]BNSF does not seem to dispute the proposition that the LIA preempts state common-law tort claims based on state standards of care. *See United Transp. Union v. Foster*, 205 F.3d 851 (5th Cir. 2000) (authored by Eighth Circuit Court of Appeals Judge Magill) (because LIA completely occupies the field of locomotive equipment regulation, state statute that required bell and whistle or horn on locomotive engines was invalid); *Oglesby v. Delaware & Hudson Ry. Co.*, 180 F.3d 458 (2nd Cir. 1999) (in suit brought by injured railroad employee against manufacturer of allegedly defective locomotive seat for failure to warn, court held that LIA applies to manufacturers of component parts of locomotives, and LIA preempts both state statutory and common-law remedies relating to locomotive safety); *Evans v. Union Pac. R.R. Co.*, No. 13-cv-1732, 2015 WL 1945104 (D. Colo. Apr. 29, 2015) (evidence related to defective design of locomotive seats was inadmissible because LIA preempted such claim); *Estate of Brust v. ACF Indus., LLC*, 127 A.3d 729, 740-41 (N.J. Super. 2015) (state negligence and products-liability claims based on design and manufacture of asbestos-contaminated locomotive brake shoes were "directed at 'the subject of locomotive equipment,'" making them "preempted under the sweeping field preemption adopted in *Napier*, and reaffirmed in *Kurns*"; noting that such claims would affect "'the design, the construction, and the material' of locomotives, including claims for failure-to-warn" (quoting *Kurns*, 132 S. Ct. at 1267)); *Wright v. Gen. Elec. Co.*, 242 S.W.3d 674 (Ky. Ct. App. 2007) (LIA preempted railroad employee's asbestos-related state tort claims against manufacturers of locomotive and its parts); *Darby v. A-Best Prod. Co.*, 811 N.E.2d 1117 (Ohio 2004) (LIA preempts state-law tort claims against manufacturers of locomotive equipment asserting injury

Def.'s Mot. to Dismiss at CM/ECF p. 3.) BNSF argues that because *Napier* and *Kurns* involved state-law claims that were premised upon *state* duties and standards of care, those case are inapplicable to this action, which is based on the defendant's "violations of the LIA and their promises to provide LIA-compliant seats." BNSF explicitly represents that it "is not seeking to hold Seats accountable to a Nebraska standard of care, but rather to hold Seats accountable to provide a locomotive seat 'in compliance with federal standards.'" (Filing 11 at CM/ECF pp. 5-6.) *See Delaware & Hudson Ry. Co., Inc. v. Knoedler Mfrs., Inc.*, 781 F.3d 656 (3rd Cir. 2015) (in case where railroad withdrew its product-liability and negligence claims, but asserted claims for indemnification, contribution, and breach of contract against equipment supplier and manufacturer for defective locomotive seats, court held that state claims based on *federal* standard of care not preempted by LIA; noting that "railroads would be left with no remedy" if court held otherwise and that "the enforcement under state law of a federal standard of care does not undermine national uniformity because it does not impose conflicting regulations that a railroad must heed during interstate travel"); *BNSF Ry. Co. v. Seats, Inc.*, 349 P.3d 1096 (Ariz. App. Ct. 2015) (LIA does not preempt railroad's state-law claims alleging that locomotive seat manufacturer failed to comply with *federal* standard of care set forth in LIA because application of federal standard does not threaten to undermine goal of nationally uniform railroad operating standards); *Engvall v. Soo Line R.R. Co.*, 632 N.W.2d 560 (Minn. 2001) (LIA does not preempt state actions based upon violation of federal standard of care set forth in the LIA, thus allowing railroad to bring state-law contribution claim against locomotive manufacturer).

Several courts have specifically rejected the above cases or have refused to recognize an exception to the broad scope of LIA preemption set forth in *Napier* and *Kurns* for claims asserting violations of a *federal* standard of care under the LIA. *Stevenson v. Union Pac. R. Co.*, No. 4:07CV00522, 2009 WL 129916 (E.D. Ark. Jan. 20, 2009) (railroad's state-law negligence and strict-liability claim for contribution

---

caused by exposure to asbestos).

and indemnity against locomotive seat manufacturer was preempted by LIA because the "subject matter of the claim falls within the preempted field," which extends to the design, construction, and material of every part of the locomotive; explicitly rejecting *Engvall* and railroad's argument that it was not relying on state-law standard; stating that LIA preemption of state tort actions against locomotive-part manufacturers "applies whether a direct action is brought against the manufacturer or a claim for indemnity and/or contribution" because "[a]ny claim, *whether state or federal*, based on LIA standards would necessarily affect the locomotive design, construction, and material decisions made by railroads" (internal quotation and citation omitted; emphasis added)); *Roth v. I & M Rail Link, L.L.C.*, 179 F. Supp. 2d 1054 (S.D. Iowa 2001) (state-law negligence claims against locomotive manufacturer brought by administrator of deceased train conductor's estate was preempted by LIA when claims were based on violations of federal regulations promulgated under LIA; noting that "[t]he majority of courts that have addressed the issue have held that the LIA preempts state common-law tort actions against manufacturers for claims relating to the design and construction of a locomotive's parts" and that "[a]ny claim, *whether state or federal*, based on LIA standards would necessarily affect the locomotive design, construction, and material decisions made by railroads" (emphasis added)); *Union Pac. R.R. Co. v. Motive Equip., Inc.*, 714 N.W.2d 232 (Wis. Ct. App. 2006) (railroad's contribution action against manufacturer of refrigerator that was installed in locomotive and resulted in employee's injury was preempted under LIA; noting that majority of courts follow the *Napier* principle that federal law preempts all state claims, that "Congress has established the field of locomotive equipment and safety as one which requires broad preemptive effect," that Congress did not provide private right of action for violations of LIA, and that "any claim, including one alleging contribution/indemnification, will be preempted by federal law if the subject matter of the claim falls within the preempted field"; criticizing and declining to follow *Engvall* as violative of congressional intent to occupy entire field of locomotive equipment regulation and as the result of "adoption of a public policy unique . . . to Minnesota"). *See also First Sec. Bank v. Union Pac. R.R. Co.*, 152 F.3d 877 (8th Cir. 1998) (LIA preempted state-law tort claim brought by estate of deceased motorist who

5

was struck by train to the extent such claim challenged adequacy of railroad's warning horn; citing federal regulation that established minimum sound levels for warning devices on locomotives); *Springston v. Consol. Rail Corp.*, 130 F.3d 241 (6th Cir. 1997) (LIA preempted injured motorist's state tort claims against train manufacturer for not equipping train with warning devices that were "above and beyond those devices required by federal law"); *Law v. Gen. Motors Corp.*, 114 F.3d 908 (9th Cir. 1997) (Kozinski, J.) (LIA preempts state common-law tort claims brought by railroad employees against railroad manufacturers for injuries arising out of alleged design defects; noting "[t]here is no doubt that the Secretary of Transportation has authority to regulate the design of the parts appellants claim are defective"); *Scheiding v. Gen. Motors Corp.*, 993 P.2d 996 (Cal. 2000) (LIA preempted railroad employees' defective-design and failure-to-warn claims under state law; noting that LIA does not evidence congressional intent to allow state remedies for design defects and that because federal regulations addressed locomotive insulation, "any failure-to-warn claims relating to that subject" are preempted).

BNSF's complaint broadly references the defendant's noncompliance with the LIA, citing 49 U.S.C. § 20701, which provides in part: "A railroad carrier may use or allow to be used a locomotive or tender on its railroad line only when the locomotive or tender and its parts and appurtenances . . . are in proper condition and safe to operate without unnecessary danger of personal injury." The complaint further alleges that the defendant failed to "use reasonable care to see that the subject seat was safe, suitable for its intended use, and in compliance with the LIA"; the defendant failed to use "reasonable care in the design, manufacture and sale of the subject seat for its intended purpose"; and the offending seat had a "design defect in the reclining mechanism [that] made the subject seat unreasonably dangerous for its [] intended use or for any use Seats, Inc. could have reasonably foreseen." (Filing 1 ¶¶ 25, 27, 33.)

As with LIA-preempted tort claims alleging that a locomotive part manufacturer violated a state negligence standard, tort claims like BNSF's in this case that are based on the federal LIA standard of locomotive parts being "in proper condition and safe

6

to operate without unnecessary danger of personal injury" would require each court to evaluate whether certain locomotive parts and equipment comply with the LIA standard. Such a determination could easily result in one court concluding that a piece of train equipment meets the standard and another court deciding that the same equipment is inadequate under the same LIA standard. Obviously, courts will differ in deciding what meets LIA standards—that is, what constitutes "proper condition," whether the equipment at issue is "safe to operate," and whether the equipment creates an "unnecessary danger of personal injury." 49 U.S.C.A. § 20701(1). Differing decisions on these questions will necessarily undermine the goal of preserving nationally uniform railroad operating standards—the very rationale for the existence of the field preemption doctrine in the context of the LIA—and will affect the locomotive design, construction, and material decisions made by railroads. *Roth*, 179 F. Supp. 2d at 1062 ("Any claim, whether state or federal, based on LIA standards would necessarily affect the locomotive design, construction, and material decisions made by railroads.").

As explained in *Mehl v. Canadian Pac. Ry., Ltd.*, 417 F. Supp. 2d 1104, 1120 (D.N.D. 2006), in the context of discussing whether the plaintiff derailment victims' state-law tort claims against the railroad were preempted by the Federal Railroad Safety Act and applicable regulations:

> "While federal preemption often means that there is no remedy to a claimant, in many instances unfortunately this result is necessary to vindicate the intent of Congress. By pervasively legislating the field of railroad safety, Congress demonstrated its intent to create uniform national standards and to preempt state regulation of railroads. If state common law tort claims were permitted to proceed despite this Congressional intent, on the ground that the purported tortfeasor had in some way allegedly fail[ed] to comply with the *federal standards*, then manufacturers would inevitably b[e] subjected to varying interpretation of the *federal regulations* in the different states. Inevitably, these tort actions would generate precisely those inconsistencies in railroad safety standards that Congressional action was intended to avoid."

7

*Mehl*, 417 F. Supp. 2d at 1120 (quoting *Ouelette v. Union Tank Car Co.*, 902 F. Supp. 5, 10 (D. Mass. 1995)) (emphasis added).

In the absence of clear authority from the Eighth Circuit Court of Appeals or the Supreme Court involving the factual circumstances alleged here, and in light of the broad scope of LIA preemption set forth in *Napier* and *Kurns*, I decline BNSF's invitation to draw a distinction between tort claims based on a *state* standard of care, as opposed to the LIA's *federal* standard of care, for purposes of LIA preemption.

Here, the basis of all of BNSF's claims is the underlying claim that BNSF's engineer suffered injury as a result of the defective condition of a locomotive part. Therefore, BNSF can only recover from the part's manufacturer if the engineer could have recovered from the manufacturer himself. If the engineer's claim would be preempted, so would BNSF's claim. *Motive Equipment*, 714 N.W.2d at 244. Because the injured engineer's negligence and product-liability claims may affect "the design, the construction, and the material" of locomotives, *Napier*, 272 U.S. at 611, these claims would fall within the preempted field broadly defined by *Napier* and *Kurns*. Thus, all of BNSF's claims against the manufacturer of the offending equipment—each of which is based on whether Seats, Inc., failed to provide locomotive equipment that was safe, suitable for its intended use, and in compliance with LIA standards—are also preempted. *Motive Equipment*, 714 N.W.2d at 247 ("*any claim*, including one alleging contribution/indemnification, will be preempted by federal law if the subject matter of the claim falls within the preempted field" (emphasis added)).

Because all of BNSF's claims against Seats, Inc., are preempted under the LIA, discussion of the remaining grounds for the defendant's motion to dismiss is unnecessary.

Accordingly,

IT IS ORDERED:

1. The motion to dismiss (Filing 8) filed pursuant to Fed. R. Civ. P. 12(b)(6) by defendant Seats, Inc., is granted, and this case is dismissed with prejudice;

2. Judgment shall be entered by separate document.

DATED this 23rd day of January, 2017.

                              BY THE COURT:
                              s/ *Richard G. Kopf*
                              Senior United States District Judge