IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| BNSF RAILWAY COMPANY, a Delaware Corporation authorized to do business in Nebraska, | ) ) ) ) | 4:16CV3121 |
|---|---|---|
| Plaintiff, | ) ) | |
| v. | ) ) | **MEMORANDUM AND ORDER** |
| SEATS, INCORPORATED, a Wisconsin Corporation, | ) ) ) ) | |
| Defendant. | ) ) | |

Plaintiff BNSF alleges that in 2015, it settled a contested Federal Employers' Liability[1] ("FELA") and Locomotive Inspection Act[2] ("LIA") action with an employee engineer. (Filing 1, Complaint ¶¶ 16 & 19.) The engineer alleged that the backrest of his locomotive seat gave away suddenly due to an allegedly defective reclining mechanism, resulting in career-ending injuries to his back. (*Id.* ¶¶ 15 & 17.) He claimed the locomotive seat—which was designed, manufactured, and marketed by the defendant in this action, Seats, Inc., and installed by General Electric ("GE")—did not comply with the federal standards set forth in the LIA because it was not in proper condition and safe to operate without unnecessary danger of personal injury. (*Id.* ¶¶ 12-14, 18.)

In this diversity action, BNSF alleges that Seats, Inc., contracted to sell locomotive seats to GE, a locomotive manufacturer, for use in GE's locomotives, including the one in which the BNSF employee engineer was injured. (*Id.* ¶¶ 8-9.)

---

[1] 45 U.S.C. § 51, *et seq*.

[2] 49 U.S.C. § 20701, *et seq*.

BNSF claims it is a third-party beneficiary of the contract between Seats, Inc., and GE to supply and install seats in locomotives used in interstate commerce that were safe, suitable for their intended use, and in compliance with the LIA. (*Id.* ¶ 11.) BNSF asserts claims for products liability based on both negligence and strict liability (Counts I & II); breach of contract (Count III); and equitable subrogation, indemnity, or contribution (Count IV). BNSF seeks to recover from Seats, Inc., the amount of the settlement with its injured engineer, expenses, and attorneys' fees incurred as a result of the physical harm caused to the engineer by the defective, non-LIA-compliant seat.

On January 23, 2017, this court granted Seats, Inc.,'s Motion to Dismiss based on Fed. R. Civ. P. 12(b)(6) (Filing No. 8) on the ground that BNSF's claims were preempted by the LIA (Filing Nos. 16 & 17). Because the court decided that all of BNSF's claims were preempted, it declined to discuss the remaining grounds for the Motion to Dismiss—that is, Seats, Inc.'s arguments that (1) BNSF's breach-of-contract allegations (Count III) fail to state a claim because BNSF is not an intended third-party beneficiary of the subject contract, and (2) BNSF's equitable subrogation, indemnity, and contribution allegations (Count IV) fail to state a claim because Seats, Inc., and BNSF do not share a common liability.

BNSF appealed this court's preemption decision, which the Eighth Circuit Court of Appeals reversed and remanded with instructions that this court consider Seats, Inc.'s alternative arguments for dismissal of Counts III and IV "in the first instance." (Filing No. 24 at CM/ECF pp. 6-7.) The original Motion to Dismiss filed by Seats, Inc., (Filing No. 8) was reactivated (Filing No. 28), and the court ordered the parties to file updated briefing regarding the motion. The parties have done so (Filing Nos. 31, 33, 36, 37), and the Motion to Dismiss based on Fed. R. Civ. P. 12(b)(6) is now ripe for decision.

# I. STANDARD OF REVIEW

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

When confronted with a Rule 12(b)(6) motion, all the factual allegations contained in the complaint are accepted as true, and the complaint is reviewed to determine whether its allegations show that the pleader is entitled to relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007). If the complaint does not state "enough facts to state a claim to relief that is plausible on its face," it must be dismissed for failure to state a claim. *Id*. at 570. The plaintiffs must state enough facts to "nudge[] their claims across the line from conceivable to plausible." *Id*. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Id*. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

While a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotation marks, brackets, and citations omitted).

## II. DISCUSSION

## A. Counts I & II: Product Liability

In its renewed Motion to Dismiss, Seats, Inc., argues that the economic-loss doctrine, as described in *Lesiak v. Central Valley Ag Co-op., Inc.*, 808 N.W.2d 67 (Neb. 2012), bars BNSF's product-liability claims.[3] Generally stated, the economic-loss doctrine "is a judicially created doctrine that sets forth the circumstances under which a tort action is prohibited if the only damages suffered are economic losses." *Lesiak*, 808 N.W.2d at 80 (internal quotation marks and citation omitted). The

---

[3]Without citation to authority, BNSF asserts that Seats, Inc., cannot raise a new basis for dismissal that was not alleged in its original Motion to Dismiss. (Filing No. 33 at CM/ECF p. 1.) Courts may exercise their discretion to consider new arguments that could be raised in a later motion, like a motion for summary judgment, and when addressing such arguments on remand would not be inconsistent with the appellate court's decision. Such is the case here. *Whitmire v. Kansas City, Missouri Bd. of Police Commissioners*, No. 16-1020, 2018 WL 4134696, at *1 (W.D. Mo. Aug. 29, 2018) (citing *Banko v. Apple, Inc.*, Case No. 13-02977 RS, 2013 WL 6623913, at *2 (N.D. Cal. Dec. 16, 2013) ("Although Rule 12(g) technically prohibits successive motions to dismiss that raise arguments that could have been made in a prior motion . . . courts faced with a successive motion often exercise their discretion to consider the new arguments in the interests of judicial economy." (internal quotation marks and citation omitted)) and *TrueNorth Cos., L.C. v. TruNorth Warranty Plans of N.A.*, LLC, 292 F. Supp. 3d 864, 868-69 (N.D. Iowa 2018) (finding "it would be inconsistent with the spirit of Rule 1 to deny [a successive pre-Answer] motion" on the basis of Rule 12(g) where addressing the substantive issues in the pre-Answer motion would limit or refine the same issues that could be raised in a later motion)); Stephen E. Arthur & Robert S. Hunter, *Federal Trial Handbook—Civil* § 8:12 (4th ed. Sept. 2018) ("Upon remand, the trial court may consider, as a matter of first impression, those issues not expressly or implicitly disposed of by the appellate decision. A trial court is thereby free to make any order or direction in further progress of the case, not inconsistent with the decision of the appellate court, as to any question not settled by the decision.").

doctrine originated, and continues to apply, in the product-liability context, and is defined in Nebraska as follows:

> [T]he economic loss doctrine precludes tort remedies only where the damages caused were limited to economic losses and where either (1) a defective product caused the damage or (2) the duty which was allegedly breached arose solely from the contractual relationship between the parties. And economic losses are defined as commercial losses, unaccompanied by personal injury or other property damage.

*Id.* at 81. In a defective-product scenario, "where a defective product causes harm only to itself, unaccompanied by either personal injury or damage to other property, contract law provides the exclusive remedy to the plaintiff." *Id.* at 82; *see also Dobrovolny v. Ford Motor Co.*, 793 N.W.2d 445, 449-50 (Neb. 2011) (the Nebraska Supreme Court has "adopt[ed] the rule that disallows recovery in tort when the damages are to the product alone. . . . [T]he economic loss doctrine prevents recovery under a products liability theory where the damage is solely to the product").

The Nebraska Supreme Court in *Lesiak* held that a negligence claim brought by farm owners against a farm cooperative ("co-op") for over-application of herbicide was not barred by the economic-loss doctrine because the farmers asserted that the co-op's conduct harmed their corn crop, which was considered "other property"—that is, "property other than the property that was sold pursuant to the contract." *Id.* at 83. The contract at issue in *Lesiak* was the co-op's agreement to provide the farmers all diesel fuels, chemicals, fertilizer, and seed, as well as application of the recommended herbicide for the crop year. *Id.* at 72.

Here, BNSF's product-liability claims generally allege that Seats, Inc., designed a defective locomotive seat that injured a BNSF employee, and that BNSF was financially liable for such tortious injuries under FELA. As BNSF states, "If BNSF was only claiming damages for the cost of the defective locomotive seat, then the economic loss doctrine might bar BNSF's claim. BNSF is not making that claim. . .

. In short, this is not a situation in which 'a defective product causes harm only to itself.'" (Filing No. 33 at CM/ECF p. 3 (quoting *Lesiak*, 808 N.W.2d at 81, 83).)[4]

To the extent Defendant argues that BNSF cannot bring both tort and contract claims in the same action, a plaintiff may plead alternative and inconsistent legal causes of action arising out of the same facts. *See* Fed. R. Civ. P. 8(d)(2); Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency."); *Wines, Vines & Corks, LLC v. First Nat'l of Nebraska, Inc.*, No. 8:14CV82, 2014 WL 12665802, at *5 (D. Neb. Aug. 20, 2014) (denying motions to dismiss insofar as they were based on economic-loss doctrine when claims alleged that defendants breached terms of contract and duties and statutes that were independent of contract, noting that Federal Rules of Civil Procedure allowed plaintiff to plead alternative legal theories).

Therefore, based on the allegations of the Complaint, Nebraska's economic-loss doctrine does not apply, and I shall deny Defendant's Motion to Dismiss Counts I and II.

**B. Count III: Breach of Contract**

Seats, Inc., argues that because BNSF was not an intended third-party beneficiary of the contract between Seats, Inc., and GE under which the allegedly defective seat was sold, BNSF has no right to assert a claim under such contract.

The Nebraska Supreme Court has "traditionally strictly construed who has the right to enforce a contract as a third-party beneficiary." *Palmer v. Lakeside Wellness*

---

[4]I find unpersuasive Defendant's citations to cases in other jurisdictions having nothing to do with a railroad attempting to recover from a manufacturer of a defective product when the product caused personal injury to one of the railroad's employees and when the railroad reimbursed the employee for those injuries under FELA.

*Ctr.*, 798 N.W.2d 845, 850 (Neb. 2011). Under Nebraska law, a party is entitled to sue as a third-party beneficiary when it appears by "express stipulation or by reasonable intendment that the rights and interest of such unnamed parties were contemplated and that provision was being made for them." *Podraza v. New Century Physicians of Neb., LLC*, 789 N.W.2d 260, 267 (Neb. 2010). "The right of a third party benefited by a contract to sue thereon must affirmatively appear from the language of the instrument when properly interpreted or construed. . . . [and] one suing as a third-party beneficiary has the burden of showing that the provision was for his or her direct benefit." *Id*.

Here, BNSF alleged in its Complaint that it was a third-party beneficiary to the contract between Seats, Inc., and GE to install seats on BNSF locomotives, including the one where BNSF's engineer claimed he was injured. More specifically, BNSF alleged that: (1) Seats, Inc., contracted to "sell GE seats for installation in locomotives used in interstate commerce"; (2) Seats, Inc., entered into a contract with GE to supply seats for use in interstate commerce throughout the United States, including Nebraska, "that were safe, suitable for their intended use, and in compliance with the LIA"; (3) Seats, Inc., "expected the subject seat to reach . . . BNSF"; and (4) "BNSF . . . was a third-party beneficiary of the contract entered into by Seats Inc. to sell GE seats for installation in locomotives used in interstate commerce . . . ." (Filing No. 1, Complaint ¶¶ 4, 9, 11, 22, 31, 37-40.)

Taking these allegations as true and construing them in favor of BNSF—and considering that the subject agreement has not yet been presented to the court—I conclude that BNSF has sufficiently alleged that BNSF's "rights and interest" were "contemplated and that provision was being made for [BNSF]" such that BNSF is a third-party beneficiary to the contract Seats, Inc., and GE executed for the installation of seats on BNSF locomotives. *Podraza*, 789 N.W.2d 267; *see also Delaware & Hudson Ry. Co., Inc. v. Knoedler Manufacturers, Inc.*, No. 1:11-CV-00314, 2018 WL 5312758, at *3 (W.D. Pa. Oct. 26, 2018) (locomotive seat manufacturer's motion for

summary judgment on breach-of-contract claim in similar case denied because facts established that GE and seat manufacturer contracted to order, build, and acquire seats to meet railroad's requirements and that railroad was an intended third-party beneficiary to contract between GE and manufacturer).

Therefore, I shall deny Seats, Inc.'s Motion to Dismiss BNSF's breach-of-contract claim.

### C. Count IV: Indemnity, Contribution, or Equitable Subrogation

BNSF's Complaint alleges that it was required to pay a settlement with its injured engineer solely because of its legal relationship with the engineer; BNSF's liability to the engineer was passive and secondary, as opposed to Seats, Inc.'s active and primary liability; Seats, Inc., negligently and contractually failed to supply the subject seat in a manner that was safe, suitable for its intended use, and in compliance with the LIA; and Seats, Inc., should be obligated to pay BNSF for its settlement with the engineer. (Filing No. 1 at CM/ECF ¶¶ 43-48.)

#### 1. Indemnity & Contribution Claims

Seats, Inc., first argues that BNSF's indemnification and contribution claims must be dismissed because BNSF and Seats, Inc., do not share a common liability to BNSF's injured engineer. "State law governs a railroad's right to recover indemnity or contribution from a third party for liability incurred under FELA." *Madden v. Antonov*, 966 F. Supp. 2d 851, 856 (D. Neb. 2013); *see also Norfolk & W. Ry. Co. v. Ayers*, 538 U.S. 135, 162 (2003) ("The federal and state reporters contain numerous FELA decisions stating that railroad employers may be held jointly and severally liable for injuries caused in part by the negligence of third parties, and even more recognizing that FELA defendants may bring indemnification and contribution actions

against third parties under otherwise applicable state or federal law.").

Under Nebraska law, "[a] party has a claim for indemnification if it pays a common liability that, as between itself and another party, is altogether the responsibility of the other party." *United General Title Insurance Company v. Malone*, 858 N.W.2d 196, 212-13 (Neb. 2015). "[E]quitable indemnity is available to a party who, without active fault on its own part, has been compelled by reason of some legal obligation, to pay damages occasioned by the initial negligence of another, and for which the first is only secondarily liable. Secondary liability is that which rests upon a fault that is imputed or constructive only, being based on some legal relation between the parties, or arising from some positive rule of common or statutory law." *Madden*, 966 F. Supp. 2d at 856 (internal quotation marks and citations omitted).

"In contrast, a claim for contribution arises when a party has paid more than its fair share of a common liability that is allocated in some proportion between itself and another party." *Malone*, 858 N.W.2d at 213. "Contribution is defined as a sharing of the cost of an injury as opposed to a complete shifting of the cost from one to another, which is indemnification." *Id*. at 212. "The prerequisites to a claim for contribution are that the party seeking contribution and the party from whom it is sought share a common liability and that the party seeking contribution has discharged more than his fair share of the common liability." *Id*.

At this early pleading stage, I conclude that BNSF's allegations are sufficient to state a plausible claim for both equitable indemnity and contribution. Which theory of recovery ultimately applies will depend on whether the BNSF engineer's injury is the full responsibility of Seats, Inc., or whether BNSF and Seats, Inc., share liability for the injury such that they must share of the cost of the injury. But that determination cannot be made at this stage of the proceedings and, as stated above, BNSF is entitled to plead alternative causes of action arising out of the same facts. Therefore, I will deny Seats, Inc.'s Motion to Dismiss BNSF's claims for indemnity

and contribution. *Madden*, 966 F. Supp. 2d at 855-56 ("FELA does not bar railroads from seeking indemnity from third parties"; because FELA allows railroads to be liable for dangerous conditions caused or created solely by negligent acts of third party, "a railroad may have a claim for indemnity as a passive tortfeasor against another tortfeasor whose active conduct created the danger to the plaintiff"); *Knoedler*, 2018 WL 5312758, at *5 (the fact that "the only listed cause of action that FELA provides for an injured employee is against his or her employer . . . . does not prevent employers from seeking contribution from other tortfeasors"); *see also Ayers*, 538 U.S. at 165 ("Once an employer has been adjudged negligent with respect to a given injury, it accords with the FELA's overarching purpose to require the employer to bear the burden of identifying other responsible parties and demonstrating that some of the costs of the injury should be spread to them.").

### 2. Equitable Subrogation Claim

Seats, Inc., next argues that BNSF's equitable-subrogation[5] claim must be dismissed because Seats, Inc., cannot be liable to BNSF's injured engineer under FELA, so BNSF has not satisfied any debt owed by Seats, Inc. In other words, Seats, Inc., maintains that it cannot be liable for the engineer's FELA claim because only BNSF can be liable under FELA.

As this court has previously found, "[t]his argument is without merit" because "[a] claim for subrogation requires only a common *harm* that both parties may be held

---

[5]"Generally, subrogation is the right of one, who has paid the obligation which another should have paid, to be indemnified by the other." *SFI Ltd. Partnership 8 v. Carroll*, 851 N.W.2d 82, 88 (Neb. 2014). "It is the substitution of one person in the place of another with reference to a lawful claim, demand, or right, so that the one who is substituted succeeds to the rights of the other in relation to the debt or claim, and its rights, remedies, or securities." *Midwest PMS v. Olsen*, 778 N.W.2d 727, 732 (Neb. 2010).

liable for, and this common liability need not rest upon the same grounds or theories of recovery." *Madden*, 966 F. Supp. 2d at 859-60. Here, the harm for which BNSF paid and for which Seats, Inc., is allegedly liable is the same—the engineer's injury. Because the harm is the same, the facts that BNSF paid its engineer pursuant to FELA and that Seats, Inc., might be liable for such payment under a different theory of recovery is of no consequence. Therefore, Seats, Inc.'s Motion to Dismiss BNSF's equitable-subrogation claim will be denied.

Accordingly,

IT IS ORDERED:

1. Defendant Seats, Inc.,'s Motion to Dismiss based on Fed. R. Civ. P. 12(b)(6) (Filing No. 8) is denied without prejudice to reassertion in a properly supported motion for summary judgment.

2. This matter is referred to Magistrate Judge Zwart for further progression.

DATED this 18th day of January, 2019.

BY THE COURT:

s/ *Richard G. Kopf*
Senior United States District Judge